IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MEGA POINT LIMITED, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:23-CV-1565-DII |
| | § | |
| VILLA T, LLC, | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court is Defendant Villa T, LLC's ("Villa T") opposed motion to stay litigation, or in the alternative motion to compel arbitration, or in the alternative, motion to dismiss. (Dkt. 14). Plaintiff Mega Point Limited ("Mega Point") filed a response in opposition, (Dkt. 22), and Villa T filed a reply, (Dkt. 24). Having considered the parties' briefs, the evidence, and the relevant law, the Court finds that Villa T's motion to compel arbitration and stay litigation should be granted and that all other pending motions in this case should be mooted.

## I. BACKGROUND

On January 30, 2023, Villa T entered into a purchase agreement (the "Purchase Agreement"), pursuant to which Villa T agreed to purchase from Mega Point a Mexican vacation property. (Mot., Dkt. 14, at 2; Purchase Agreement, Dkt. 14-1, at 7–13). In the Purchase Agreement, Villa T agreed to deposit escrow funds totaling $225,650.00 with Global Escrow Solutions, LLC ("GES"), as an earnest money deposit, with $650.00 of that amount going to GES as their fee for establishing the escrow account, and $225,000.00 going toward the purchase price at closing. (Purchase Agreement, Dkt. 14-1, at 7). The parties agreed that the earnest money deposit was non-refundable to Villa T, unless Mega Point defaulted in its obligation to transfer ownership of the property according to the terms and conditions of the Purchase Agreement. (*Id.*). Shortly thereafter,

on February 3, 2023, Mega Point, Villa T, and GES entered into the Global Escrow Solutions, LLC

Escrow Agency Agreement (the "Escrow Agreement"), under which Villa T placed $225,000 in

escrow with GES. (Mot., Dkt. 14, at 2; Escrow Agreement, Dkt. 14-1, at 15–21). The Escrow

Agreement contains an arbitration provision that states in relevant part:

> <u>Disagreement between Parties regarding Disbursement.</u> In the event
> of a disagreement between the Seller and Purchaser as to disposition
> of the Escrowed Funds, the Seller and Purchaser shall (a) first attempt
> to resolve such disagreement through use of a United States of
> America based professional mediation service. . . . If an agreement is
> not reached within 30 days through mediation, then Seller and
> Purchaser shall submit such disagreement to a United States of
> America based binding arbitration service (e.g., JAMS
> www.jamsadr.com). The arbitrator shall review the claims made by
> each party and then make a determination as to how the funds shall be
> distributed. The arbitrator's ruling shall be provided to the Escrow
> Agent who shall follow the arbitrator's ruling as to disposition of the
> Escrowed Funds. The cost of mediation and/or arbitration shall be
> borne equally by the Seller and Purchaser unless provided otherwise in
> the mediation agreement or arbitrator's ruling.

(Escrow Agreement, Dkt. 14-1, at 16).

Villa T alleges that many issues with the property ensued, including wrongful holdover

possession by the resident and damage to the property which culminated in a criminal suit and

court-ordered 24-hour surveillance. (Mot., Dkt. 14, at 2). Accordingly, on June 13, 2023, Villa T

informed Mega Point that it would not proceed further with the sale process because Mega Point

was unable to provide a safe and unobstructed transfer of the property. (Cancellation Letter, Dkt.

14-2, at 8–9). Villa T also requested the return of its escrow funds. (*Id.*). Mega Point refused, and the

parties were unable to agree which of them was due the escrow funds. Thereafter, Villa T attempted

to initiate a mediation process with Mega Point, in accordance with the Escrow Agreement. The

parties, however, were unable to settle their dispute within the 30 days allotted in the Escrow

Agreement. (Mot., Dkt. 14, at 2). On September 26, 2023, pursuant to the Escrow Agreement, Villa

T commenced an arbitration proceeding with JAMS in Georgia to determine who should be

2

awarded the escrow funds. (Demand for Arbitration, Dkt. 1-2, at 26–46). This arbitration proceeding has recently begun in earnest, with the arbitrator having set a discovery deadline of March 14, 2024, and a final hearing on the merits for May 9 and 10, 2024. (Ex. 1, Dkt. 28-1).

On December 5, 2023, Mega Point filed its original petition for declaratory and injunctive relief and application for stay of arbitration in state court in Travis County, Texas. (Pet., Dkt. 1-2). Mega Point brings a claim against Villa T for breach of the Purchase Agreement and Escrow Agreement. Mega Point also brings claims for a declaratory judgment against Villa T and GES, seeking a declaration that Mega Point is entitled to the escrow funds and a declaration that the Escrow Agreement's arbitration provision was never properly invoked, and as such Mega Point and Villa T did not agree to arbitrate before JAMS. (*Id.* at 8–9). Mega Point also seeks a temporary and permanent injunction enjoining Villa T from proceeding with the arbitration against Mega Point before JAMS and a stay of that arbitration proceeding. (*Id.* at 9–11). On December 27, 2023, Villa T timely removed the state action to this Court on the basis of diversity jurisdiction. (Notice of Removal, Dkt. 1).

Upon arriving in this Court, Mega Point filed a motion for a temporary restraining order ("TRO") to stay the arbitration and a motion for a hearing on the motion for a TRO. (Dkts. 6, 7). This Court issued an order stating that it would decline to decide the motion for a TRO until Villa T had a chance to respond to these motions. (Order, Dkt. 11). Villa T then filed the instant motion to stay litigation, motion to compel arbitration or motion to dismiss, (Dkt. 14), and a response in opposition to Mega Point's motion for a TRO, (Dkt. 17).

During this time, GES also appeared in this action, filing an answer and a counterclaim and crossclaim in interpleader. (Dkt. 13). GES then filed an unopposed motion to deposit its escrow funds into the registry of the Court and a motion to discharge GES with prejudice. (Dkt. 18). On February 2, 2024, the Court granted GES's motion and ordered that upon GES's deposit of the

funds with the Clerk of the Court, GES would be dismissed from this case with prejudice. (Order, Dkt. 23). On February 13, the escrow funds were received into the Court registry, (Dkt. 25), and GES was dismissed as a party in this case.

## II. LEGAL STANDARD

The Federal Arbitration Act (the "FAA") permits a party to file a motion to compel arbitration based on "the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration." 9 U.S.C. § 4. "Enforcement of an arbitration agreement involves two analytical steps. The first is contract formation—whether the parties entered into any arbitration agreement at all. The second involves contract interpretation to determine whether this claim is covered by the arbitration agreement." *Kubala v. Supreme Prod. Servs, Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). Questions of an arbitration agreement's existence and validity are governed by state law. *See, e.g.*, *Halliburton Energy Servs. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 530 (5th Cir. 2019). Federal policy favors arbitration and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983) (citations omitted).

## III. DISCUSSION

As to the first requirement of contract formation, both parties signed and executed the Escrow Agreement, which clearly states that if there is a disagreement between the parties over the disposition of the escrow funds and the parties do not reach an agreement within 30 days through mediation, then "Seller and Purchaser shall submit such disagreement to a United States of America based binding arbitration service." (Escrow Agreement, Dkt. 14-1, at 16). Mega Point does not dispute that it signed the Escrow Agreement, nor does it dispute the validity of the Agreement. Therefore, the Court finds that the Escrow Agreement is a valid contract and that the parties entered into an arbitration agreement as part of this contract.

As to the second requirement of arbitrability of the asserted claims, the arbitration provision plainly applies to all disagreements between the parties regarding the disbursement of escrow funds. (*See id.*). Mega Point, however, argues that the parties cannot be compelled to arbitration according to the Escrow Agreement because the current dispute does not fall under the Escrow Agreement but instead falls under the Purchase Agreement, which does not contain an arbitration provision. (Pl.'s Resp., Dkt. 22, at 1–2). Mega Point contends that the parties' dispute relates to which party breached the Purchase Agreement by failing to close, so, only after that dispute is resolved would the Escrow Agreement and its arbitration provision be applicable. (*Id.*).

The Court disagrees for two reasons. First, Mega Point clearly states in Count 1 of its original petition that it is bringing breach of contract claims for breach of both the Purchase Agreement and the Escrow Agreement. (Pet., Dkt. 1-2, at 7–8). By Mega Point's own words, then, the claims in this case are covered by the Escrow Agreement and its arbitration provision. Second, the Purchase Agreement and Escrow Agreement are so inextricably intertwined such that the arbitration agreement in the Escrow Agreement covers disputes that arise under the Purchase Agreement. *See Safer v. Nelson Fin. Grp, Inc.*, 422 F.3d 289, 296 (5th Cir. 2005) ("This court has repeatedly found that when agreements are interdependent and exist to further a single goal, an arbitration clause in one of the agreements reaches all aspects of the parties' relationship, including disputes that might arise out of the other agreement.") (cleaned up). The dispute to resolve the disposition of the escrow funds will necessitate a decision about whether either party breached the Purchase Agreement in failing to close. Mega Point argues that the agreements require that a court determine the question of breach under the Purchase Agreement first and only thereafter could an arbitration proceeding be allowed to proceed as to the disposition of the escrow funds. (*See* Pl.'s Resp., Dkt. 22, at 5–6). But such a reading of the agreements would obviate the need for an arbitrator and render moot the parties' arbitration agreement. It is clear that when signing the

Escrow Agreement, the parties intended that any question of breach and subsequent dispute over the resolution of the escrow funds would both be handled by an arbitrator, despite there not being an arbitration clause in the earlier-signed Purchase Agreement. Therefore, Mega Point's claims in this case fall within the scope of the arbitration agreement.

Despite the existence of a valid arbitration agreement and Mega Point's claims falling under that agreement, Mega Point raises several reasons why the current arbitration proceeding before JAMS in Georgia is improper and should be stayed. First, Mega Point argues that the arbitration provision in the Escrow Agreement has not been properly invoked in this instance because the provision contains conditions precedent that have not been satisfied. One condition precedent that Mega Point asserts is the requirement that when a disagreement arises about the escrowed funds, the Escrow Agreement mandates that the parties "first attempt to resolve such disagreement through use of a United States of America based professional mediation service." (Escrow Agreement, Dkt. 14-1, at 16). Because the parties did not first mediate their claim, so argues Mega Point, Villa T's invocation of the arbitration process is premature. (Pet., Dkt. 1-2, at 6–7).

However, it is Mega Point who obstructed the mediation process. According to affidavits from a member of Villa T and Villa T's counsel, Villa T tried numerous times to initiate a mediation process with Mega Point, but Mega Point's counsel refused the initial request and then ignored further requests made by Villa T's counsel. (*See* Tatum Aff., Dkt. 14-1, at 9–10; Robbins Aff., Dkt. 14-2, at 1–2; Ex. B-2, Dkt. 14-2, at 11–18). Mega Point cannot assert a defense of conditions precedent when it acted to prevent a condition precedent from being completed. *See Donaldson v. Dig. Gen. Sys.*, 168 S.W.3d 909, 916 (Tex. App.—Dallas 2005, pet. denied) ("[I]f one party prevents the other from performing a condition precedent, then the condition is considered as fulfilled.") (internal quotation marks omitted). Because Villa T attempted to initiate a mediation process at least on August 2, 2023, (*see* Ex. B-2, Dkt. 14-2, at 16–17), and 30 days passed before Villa T initiated

arbitration on September 26, (*see* Demand for Arbitration, Dkt. 1-2, at 46), Villa T complied with the process laid out by the arbitration provision.

The second condition precedent that Mega Point asserts is the alleged requirement that both parties agree to submitting their claim to arbitration. Mega Point relies on the provision that states: "If an agreement is not reached within 30 days through mediation, then *Seller and Purchaser shall submit* such disagreement to a United States of America based binding arbitration service." (Escrow Agreement, Dkt. 14-1, at 16) (emphasis added). Mega Point interprets this provision to mean that both parties had to assent to arbitration, and because Mega Point did not agree to arbitrate, the arbitration provision was not properly invoked. However, the language of the provision is not discretionary. The provision mandates that if the parties' dispute is not resolved within 30 days through mediation, then both parties must submit their claim to arbitration. The Court need not consider if Mega Point agreed to arbitration at the time that the provision was invoked. Rather, the relevant question is whether Mega Point agreed to arbitration when it executed the Escrow Agreement. Having already determined that the parties agreed to a valid arbitration agreement as part of the Escrow Agreement and that Mega Point's claims fall under this agreement, Mega Point is bound by its prior assent to arbitrate.

Next, Mega Point argues that the arbitration cannot proceed in Georgia because the Escrow Agreement has a venue clause which names Travis County, Texas as the proper venue for any disputes related to the Escrow Agreement. (Pl.'s Resp., Dkt. 22, at 2, 4). Paragraph 10 of the Escrow Agreement states: "[A]ll parties agree to the jurisdiction of Travis County, Texas if any action or legal proceeding arises with respect to this Agreement, waiving any other jurisdiction it may be entitled to now or hereafter by reason of its present or future domicile." (Escrow Agreement, Dkt. 14-1, at 19). This provision is more properly characterized as a jurisdiction clause, which disallows either party from asserting that Travis County lacks personal jurisdiction over them should their

domiciles change. Under Texas law, "a court construing a contract must read that contract in a manner that confers meaning to all of its terms, rendering the contract's terms consistent with one another." *Indem. Ins. Co. of N.A. v. W & T Offshore, Inc.*, 756 F.3d 347, 351 (5th Cir. 2014) (internal quotation marks omitted). In doing so, the Court interprets the jurisdiction clause as applying only to lawsuits, not to arbitrations. Thus, read together, the clauses require the parties to arbitrate their dispute first, and then should a lawsuit arise out of the arbitration, that litigation may be conducted in the state and federal courts of Travis County, Texas. *See Box Cement Co. v. Holnam, Inc.* 12 F.3d 1098 (5th Cir. 1993) (unpublished) (harmonizing jurisdiction and arbitration clauses in a similar fashion). Indeed, this suit, in requesting a stay of an arbitration proceeding, demonstrates an instance where the jurisdiction clause is properly invoked, whereas the underlying issues of breach must be arbitrated. Because the arbitration provision is silent as to venue, the Court finds that arbitration proceeding in Georgia is not improper.

Last, Mega Point disputes whether the arbitration may occur before JAMS. (Pl.'s Resp., Dkt. 22, at 1, 4). It contends that the arbitration provision does not "require arbitration before JAMS and Mega Point did not agree to arbitration before JAMS." (*Id.*). True enough. But neither does the arbitration provision prohibit arbitration before JAMS. All the provision states is that disputes shall be submitted to a "United States of America based binding arbitration service (e.g., JAMS)." (Escrow Agreement, Dkt. 14-1, at 16). JAMS fulfills that requirement by being a US-based arbitration service. By naming JAMS as an example of a United States based arbitration service, the parties clearly anticipated that their disputes may be handled by JAMS.

Because the Court finds that the parties made an agreement to arbitrate the breach of contract claims that Mega Point asserts, the Court will grant Villa T's motion to stay the litigation and compel the parties to arbitrate those claims. In doing so, the parties may proceed in the arbitration currently ongoing before JAMS in Georgia. Defendant also requests that this Court

dismiss this action for lack of subject matter jurisdiction due to the arbitration agreement. (Mot., Dkt. 14, at 14–17). The FAA provides that a federal court should stay a civil action upon finding that an issue is referable to arbitration. 9 U.S.C. § 3. When all the issues in an action must be submitted to arbitration, a court may—not must—dismiss the action. *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992); *see also Apache Bohai Corp. v. Texaco China*, 330 F.3d 307, 311 & n.9 (5th Cir. 2003) (finding that the decision of the district court to stay the case pending arbitration was not an abuse of discretion). Because GES has deposited the escrow funds in this Court's registry, the Court finds it proper to stay Mega Point's breach of contract claims. However, as for Mega Point's requests for injunctive relief to stay the arbitration and Mega Point's request for a declaration stating that the parties never agreed to arbitrate their claims before JAMS, the Court will dismiss these claims with prejudice, as the Court has found that the ongoing arbitration proceeding is proper.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Villa T's motion to stay litigation, or in the alternative motion to compel arbitration, or in the alternative, motion to dismiss, (Dkt. 14), is **GRANTED IN PART**. The motion is **GRANTED** insofar as Mega Point's requests for injunctive relief to stay the arbitration and Mega Point's request for a declaration stating that the parties never agreed to arbitrate their claims before JAMS are **DISMISSED WITH PREJUDICE**. Villa T's motion is also **GRANTED** insofar as Mega Point's remaining claims are **STAYED** pending arbitration All other relief requested in Villa T's motion, is **DENIED**.

**IT IS FURTHER ORDERED** that the parties shall file quarterly joint status reports detailing the status of the arbitration proceedings, with the first status report being due on or before **June 13, 2024**.

**IT IS FINALLY ORDERED** that all other pending motions in this case relating to Mega Point's request for temporary injunctive relief, (Dkts. 6, 7, 26, 27), are **MOOT**.

**SIGNED** on March 13, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE